UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD DRESSER and MARILYN
DRESSER, Husband and Wife, and as
Next Friend of MIKHAIL ROBERT
DRESSER, a Minor Child,

        Case Number 03-CV-10083-BC
        Honorable David M. Lawson

        Plaintiffs,

v.

CRADLE OF HOPE ADOPTION CENTER,
INC., a Maryland corporation,

        Defendant.
_____/

## ORDER DENYING PLAINTIFFS' MOTION *IN LIMINE*, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS *IN LIMINE*

Before the Court are cross motions *in limine* filed by the parties in preparation for trial. The facts of the case are summarized in detail in the Court's opinion on the parties' motions for summary judgment. *See Dresser v. Cradle of Hope Adoption Ctr, Inc.*, 358 F. Supp. 2d 620, 623-30 (E.D. Mich. 2005). In that opinion, the Court dismissed several of the plaintiffs' claims but left intact a negligence claim against defendant Cradle of Hope Adoption Center, Inc. on behalf of the minor child, Mikhail Dresser. *Id.* at 638-42, 643. The plaintiffs seek the exclusion of evidence of negligence on the part of plaintiffs Marilyn and Richard Dresser, Mikhail's parents, because their negligence cannot be attributed to the minor plaintiff, who has the only remaining claim. The defendant has filed five motions seeking the exclusion of evidence of damages sustained by Mikhail's family members, testimony as to the standard of care, economic and future damages, and expert testimony of Dr. Robertson and Thomas Smith. The plaintiffs oppose all the defendant's

motions except the motion to exclude evidence of damages sustained by Mikhail's family members, in which they concur. The Court will discuss each motion in turn.

I.

The plaintiffs contend that evidence of negligence of Mikhail Dresser's parents is not admissible because under Michigan law, the negligence of a parent may not be imputed to the child. *See Byrne v Schneider's Iron & Metal, Inc.*, 190 Mich. App. 176, 189, 475 N.W. 2d 854, 860 (1991); *Rodriquez v Solar of Michigan, Inc.*, 191 Mich. App. 483, 492, 478 N.W. 2d 914, 920 (1991). They also contend that Mikhail as a minor under the age of seven years old is "presum[ed] incapable of committing negligent or criminal acts or intentional torts." *Bragan ex rel v. Symanzik*, 263 Mich. App. 324, 334, 687 N.W.2d 881, 888 (2004).

The defendant argues, however, that under the state's "tort reform" legislation enacted in 1995, the defendant is entitled to ask for the apportionment of damages against all persons who may have contributed to the plaintiff's injuries. *See* Mich. Comp. Laws § 600.2957. The defendant contends that the statutory provision includes parents, and a defendant can be ordered to pay only the percentage of damages that corresponds to its own its liability, which may not include those damages for which non-parties are responsible. If that is so, then the parents' conduct is relevant to the question of their negligence.

There is no Michigan appellate decision that attempts to reconcile the statutes that require apportionment of damages and abolish joint and several liability with the common law rule against imputing a parent's negligence to a child. Therefore, since the state's highest court has not decided the issue, "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (quoting *Bailey v. V & O Press*

*Co.*, 770 F.2d 601, 604 (6th Cir. 1985)).  "Relevant data includes the state's intermediate appellate court decisions, as well as the state supreme court's relevant *dicta*, restatements of the law, law review commentaries, and the majority rule among other states." *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (internal quotes and citation omitted) (citing *Angelotta v. Am. Broad. Corp.*, 820 F.2d 806, 807 (6th Cir.1987)).

The basis of the rule that a parent's negligence cannot be imputed to the child is that, under Michigan common law, parents cannot be sued directly for certain tortious injuries to the child.  As the Michigan Court of Appeals explained, "Both comparative and contributory negligence are founded upon the breach of some legal duty. . . . Since the child cannot sue his parent for negligent supervision, the parent cannot be jointly or severally liable with another tortfeasor." *Byrne*, 190 Mich. App. at 188-89, 475 N.W.2d at 860.  Although the doctrine of intra-family immunity has been abrogated in Michigan, parental immunity still exists in cases involving "an exercise of reasonable parental authority over the child" or "reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." *Plumley v. Klein*, 388 Mich. 1, 8, 199 N.W.2d 169, 172-73 (1972).  Since this case involves the provision of medical services to Mikhail, certainly his parents would be immune from a tort claim brought against them by Mikhail.

However, in 1995 the Michigan legislature enacted Public Act 249, which amended the Revised Judicature Act and eliminated joint and several liability.  The relevant statute now states:

> In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated . . . in direct proportion to the person's percentage of fault.  In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

Mich. Comp. Laws § 600.2957(1). The purpose of this legislation is to "allocate liability according to the relative fault of all persons contributing to the accrual of a plaintiff's damages." *Lamp v. Reynolds*, 249 Mich. App. 591, 596, 645 N.W.2d 311, 315 (2002). Unlike the rule of joint and several liability, "a person shall not be required to pay damages in an amount greater than his or her percentage of fault." Mich. Comp. Laws § 600.6304(4).

Michigan courts have held that tort damages must be apportioned even against parties who are immune from suit. *See Kopp v. Zigich*, 268 Mich. App. 258, 260-61, 707 N.W.2d 601, 602-03 (2006) (apportioning damages to the plaintiff's employer who was immune from suit under the workers' compensation exclusive remedy provision). According to Michigan's intermediate appellate court, "the comparative fault statutes do[] not require proof of a duty before fault can be apportioned and liability allocated. The statutes only require proof of proximate cause." *Id.* at 260, 707 N.W.2d at 602. Given the change of the legislative focus on the tort reparations system in Michigan from making an injured plaintiff whole to protecting partially at-fault defendants from excessive exposure to damages, the Court believes that Michigan courts would conclude that liability must be apportioned under section 600.2957(1) to parents of an injured child, even if the parents are immune from suit.

The plaintiffs also contend that the defendant waived the defense by not pleading it. It appears that a claim that others are at fault is an affirmative defense that must be pleaded. *See Veltman v. Detroit Edison Co.*, 261 Mich. App. 685, 695, 683 N.W.2d 707, 713 (2004) (holding that "[i]f a party desires to take advantage of the limitations of the cited statutes, notice under the court rule is a prerequisite"). Moreover, Michigan has promulgated a court rule that prescribes notice

requirements as a condition of alleging "non-party fault." *See* Mich. Ct. Rule 2.112(K). The defendant did not serve a notice under Rule 2.112(K) in this case.

It is conceivable that Rule 2.112(K)'s notice requirements may not apply in this case because Mikhail's parents are not "non-parties"; they are named as plaintiffs in their own right and as Mikhail's next friend. The Court need not decide that question, however, because the state procedural rule does not apply in this federal action. *See Long v. Adams*, 411 F. Supp. 2d 701, 705-06 (E.D. Mich. 2006) (holding that in diversity cases, state procedural rules must yield when an issue is governed by a Federal Rule of Civil Procedure). Federal Rule of Civil Procedure 8(c) governs affirmative defenses and states that a defendant "shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c). The defendant alleged in its answer to the first amended complaint that "[a]ny damage or injury plaintiff may have suffered was caused in whole or in part by persons or factors not related to Cradle of Hope, including plaintiffs themselves, or were pre-existing conditions." Def.'s Answer First Am. Compl. at 10. That allegation is sufficient to provide the plaintiffs notice of the defense and entitle the defendant to offer evidence on it. *See Baker v. City of Detroit*, 483 F. Supp. 919, 921 (E.D. Mich. 1979) (observing that "hypertechnicality in pleading requirements should be avoided. Thus, liberal pleading rules are equally applicable to the pleading of affirmative defenses") (quoting 2A Moore's Federal Practice Par. 8.27(3)).

Evidence of Mikhail's parents' conduct is relevant to the defendant's affirmative defense, and therefore it will be received if it is otherwise admissible. The plaintiffs' motion *in limine* will be denied.

II.

The defendant argues that evidence of damages or hardship suffered by Mikhail's family members should not be received because the sole remaining cause of action belongs to Mikhail alone, and the damages of others is irrelevant. The plaintiffs agree that evidence reflecting damages suffered by Mikhail's family members would be irrelevant and inadmissible. Therefore, the Court will grant the motion and bar the evidence.

III.

The defendant next seeks an order preventing the plaintiffs' witnesses from testifying about a standard of care for adoption agencies with respect to the obligation to furnish medical records because only a qualified expert witness may furnish such testimony. The defendant believes that in order to prevail, the plaintiffs must prove that Cradle of Hope had an independent duty to secure actual medical records, had access to those medical records, and failed to turn them over timely. Furthermore, the defendant argues that to demonstrate these duties the plaintiffs must present evidence of the Russian legal system and procedures for obtaining medical records, the procedures and customs for obtaining medical records in small Russian villages, and procedures used by other Russian adoption agencies, which presumably only an expert witness can establish.

The Court disagrees. The claim that remains in this case is based on general negligence. To prevail, the plaintiffs must prove that the defendant failed to act reasonably toward Mikhail under the circumstances. Although expert testimony may be helpful, it is not necessary. The Sixth Circuit has held that where a tort is "based . . . on general principles of tort law establishing affirmative duties to act" in an area without "existing custom and practice in the profession which defines the standard of liability applicable to the particular professional conduct in question," an expert witness

is not needed to understand the professional norm. *Stiver v. Parker*, 975 F.2d 261, 273 (6th Cir. 1992) (reversing dismissal of claim by surrogate parents against surrogacy program administrators on ground that expert witness was required to establish liability). That case has direct application here.

In denying summary judgment to Mikhail's claim, this Court concluded that the "recognition of a duty of an adoption agency to the adopted child to furnish to the new parents the medical records available to it is both a logical and incremental extension of well-recognized and firmly-rooted tort principles, and consistent with established state policy." *Dresser*, 358 F. Supp. at 640-41. The determinations needed to resolve this dispute relate to reasonable standards of conduct common to tort cases regularly decided by juries; it is not beyond the ken of jurors to apprehend the duty to provide available records and decide whether that duty was breached, whether the breach caused injury, and the resulting damages. The facts to which the defendant points as requiring expert opinion – explaining the Russian legal system and procedures for obtaining medical records, the procedures and customs for obtaining medical records in small Russian villages, and procedures used by other Russian adoption agencies – are issues the parties can address through the testimony of witnesses with knowledge. An expert is not indispensable. The defendant's motion *in limine* on this ground will be denied.

IV.

The defendant moves for an order preventing Dr. Patricia Robertson, Mikhail's treating physician, from testifying about the causes, diagnosis, and treatment of medulloblastoma, and the manner in which Mikhail's medical and family history affect the treatment and outcome. The defendant does not challenge Dr. Robertson's qualifications or expertise, nor does it attack the basis

-7-

or foundation for her testimony under Federal Rule of Evidence 702. Rather, the defendant argues that because of Dr. Robertson's candid uncertainty as to the degree that treatment with vincristine contributed to Mikhail's current condition, her testimony concerning how Mikhail's past medical history and family history affected his treatment and outcome "may mislead and confuse the jury into believing that Cradle of Hope was responsible for not providing Dr. Robertson with the medical information that may have changed her decision regarding treatment." Def.'s Mot *In Limine* [dkt # 131] at 6-7. The defendant points to Dr. Robertson's testimony that she did not know "for sure" about the link between Mikhail's prior condition as disclosed in his Russian medical history and the effects of his current treatment, and peripheral neuropathy is a known side effect of vincristine treatment. The defendant reasons, therefore, that the doctor's testimony that she may not have administered the drug had she known the information in Mikhail's Russian medical records does not demonstrate whether the defendant's failure to furnish medical records caused damages.

There is no question that Dr. Robertson's testimony is relevant to the issues in the case. The argument that the evidence nonetheless might confuse the jury is governed by Federal Rule of Evidence 403, which states that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. "'Unfair prejudice' does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Bonds*, 12 F.3d 540, 67 (6th Cir. 1993) (internal quotes and citation omitted); *see also Koloda v. General Motors Parts Div., General Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983) (stating "[o]f course, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair'").

-8-

Rather, the concept of "unfair prejudice" embraces two distinct notions. First, when the evidence may tend to prove more than one proposition and thus could be considered for both a proper and an improper purpose, unfair prejudice can result when the improper purpose overwhelms or substantially overshadows any legitimate basis for receiving the evidence. *See United States v. Vandetti*, 623 F.2d 1144, 1149 (6th Cir. 1980) (quoting Advisory Comm. Note to R. 403, stating, "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). Second, unfair prejudice can result when evidence that is only marginally probative tends to be given preemptive weight by the jury substantially out of proportion to its logical force. *See Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 360 (6th Cir. 1997) (stating that "[o]therwise relevant evidence may permissibly be excluded if it serves to inflame the passions of the jury"); *Vandetti*, 623 F.2d at 1149 (observing that evidence of a witness's invocation of his Fifth Amendment right before the jury raised "a real danger that . . . [it] may be given undue weight" to the evidence "although it is entitled to none in the law").

When weighing the harmful effect of the evidence against its probative value, the Court must consider whether the proponent of the evidence can prove his point by other means. *United States v. Myers*, 123 F.3d 350, 363 (6th Cir. 1997) (noting that "[a]nother factor in the Rule 403 balancing is the availability of other means of proof, which would reduce the need for the potentially confusing evidence") (citing *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996)).

The essence of the defendant's argument is that Dr. Robertson's testimony will confuse the jury and prejudice the defense because she is not certain enough about her opinions, especially the opinions concerning causation. However, the Court believes that the jury is capable of according proper weight to that testimony, which will be subject to cross-examination. Dr. Robertson is the

plaintiff's treating physician; she is the only person who can explain her decision to recommend treatment using vincristine and discuss the factors that led to her choice. Her testimony is relevant and will be helpful to the fact finder to explain the treatment of medulloblastoma and the relationship between a patient's medical history and treatment. The Court previously determined that the plaintiffs' submitted evidence supported their theory that had Dr. Robertson "known in advance that Mikhail had suffered spinal trauma at birth, a prior diagnosis of perinatal encephalopathy, slow development and speech difficulties, and birth defects, she would have determined that Mikhail had neurological pathology and was not a good candidate for vincristine treatment" and that the vincristine treatment could have contributed to Mikhail's injury. *Dresser*, 358 F. Supp. 2d at 638. Testimony about causes, diagnosis, and treatment of medulloblastoma, when vincristine treatment is appropriate, other options for treating medulloblastoma, and how Mikhail could have been treated more safely all have a direct bearing on the issues in the case. There is little danger that the jury will give undue or preemptive weight to that testimony or consider it for an improper purpose.

The defendant contends that to prove causation the plaintiffs must show that vincristine plus a specific condition unknown to Dr. Robertson but disclosed in Mikhail's Russian medical records caused injuries. Although a connection between Mikhail's injuries and the conditions recorded in the Russian medical records would further the plaintiffs' case, such a connection is not required to establish the plaintiffs' theory. The plaintiffs can successfully show causation if they demonstrate a connection between the nondisclosure of the records and treatment selected, and then, between the treatment selected and the injury to Mikhail. Dr. Robertson's testimony may contribute to the circumstantial facts that serve to prove those ultimate propositions. *See McLean v. 988011 Ontario,*

*Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (noting that a "plaintiff in a Michigan negligence action need only provide proof of 'a reasonable likelihood of probability' that his explanation of the injury is correct," and "[a]bsolute certainty cannot be achieved in proving negligence circumstantially; but such proof may satisfy where the chain of circumstances leads to a conclusion which is more probable than any other hypothesis reflected by the evidence") (quoting *Skinner v. Square D Co.*, 445 Mich. 153, 516 N.W.2d 475 (1994)). The probative value of the evidence concerning Dr. Robertson's treatment of medulloblastoma, whether her decision would have been different had she been furnished with certain additional information, and the likely difference in Mikhail's subsequent course is not substantially outweighed by any danger of unfair prejudice or confusion. The defendant's motion *in limine* on this ground will be denied.

V.

Next, the defendant moves to exclude all testimony and evidence concerning Mr. and Mrs. Dresser's economic damages. The defendant contends that the evidence of economic damages does not relate to whether a duty was breached and Mikhail suffered injury or the resulting damages because those damages were asserted under the contract claim that the Court dismissed. The defendant further contends that injury to the parents of Mikhail and his siblings is irrelevant to the injury suffered by Mikhail and resulting damages. Alternatively, the defendant argues that evidence should be limited to damages arising out of the purportedly contraindicated application of vincristine treatments and the extraordinary expenses connected to the purportedly contraindicated application of vincristine, which was discontinued in January 2001. The defendant contends that damages should be limited to the period between the beginning of the treatment and this later date.

The plaintiffs do not claim that Mikhail's parents can recover for their own economic loss, but they insist that Mikhail should be permitted to recover economic loss, such as medical expenses, caused by the defendant's negligence even if those expenses were paid by another source, including his parents. The plaintiffs also ague that they should recover any future damages that might be occasioned by the inopportune vincrintine treatments. The defendant responds that future damages have not been requested in the pleadings and are speculative.

Mikhail may recover damages for economic damages including medical expenses even if those costs were paid by a collateral source. *See* Mich. Comp. Laws § 600.6303(4). Based on the plaintiffs' theory of the remaining cause of action, the damages should be limited to those caused by the treatment made or withheld by Mikhail's doctors as a result of the lack of information or misinformation caused by the defendant's negligence. Of course, damages that are speculative may not be awarded, but that limitation can be conveyed to the jury by a proper instruction. Evidence of economic damages that are personal to Mr. and Mrs. Dresser alone is not relevant to Mikhail's claim. However, the plaintiffs should not be limited in the presentation of their proofs on the entire impact, if any, of the defendant's negligence on Mikhail.

The defendant's motion *in limine* on this ground will be denied without prejudice to the defendant raising the issue during trial by proper objection. Consequently, this is not a "definitive ruling" as to this issue. *See* Fed. R. Evid. 103(a).

## VI.

Finally, the defendant moves to preclude Thomas Smith from testifying at trial. Apparently, Mr. Smith has been a licenced life insurance specialist since 1986 dealing in life, health, disability, and long-term care annuities, and he will testify how to structure an annuity to care for Mikhail. The

defendant contends that the plaintiffs never pleaded damages for future economic opportunity; the opinion concerning Mikhail's lost economic opportunities is speculative; any lost earning capacity was caused by the medulloblastoma, not the side effects of vincristine; and the $25,000 annual allowance in future "care/living expenses" purportedly used by Mr. Smith is arbitrary. The defendant also criticizes Mr. Smith as unqualified because he has no academic training in accounting or annuities, he does not hold a college degree, and he has never testified as an expert witness. The defendant asserts that Smith is not credible because his children attend school with the Dressers' children, Smith said he will not charge them for his services, and he will benefit if the Dressers purchase an annuity from him.

The plaintiffs acknowledge that the purpose of Smith's testimony is quite limited. He will testify only as to how to fund a $25,000 annuity. Smith stated at his deposition that he was only "there to crunch the numbers" and did not prepare any reports as to the plaintiff's life expectancy or lost earnings. Def.'s Mot. *In Limine* [dkt # 134] Ex. G, Thomas Smith Dep. at 16. Nevertheless, the evidence is contingently admissible to show the jury how to determine a present value for long-term damages suffered by Mikhail, provided the plaintiffs establish a foundation for such damages through other evidence. *See* 2 Joseph M. McLaughlin, Weinstein's Federal Evidence § 401.04[2][e] (2d ed. 2004) (noting that "[t]he judge may conditionally admit evidence subject to proof of connecting facts, and if the connecting facts are not proven, strike the evidence from the record"). Smith testified that Marilyn Dresser "had chosen the number of $25,000 per year starting at age 18 in today's dollars and continuing on from that point. The question was: What would it take in today's dollars to do that?" Def.'s Mot. *In Limine* [dkt # 134] Ex. G, Thomas Smith Dep. at 16. The

-13-

jury may rely on the evidence provided by Smith when making a damages determination if it finds that such damages relate to the injury suffered by the plaintiffs from the treatment.

The defendant also attacks the merits of Smith's testimony, although the defendant does not explain how late production of the testimony, methodology, or minimal documentation make the testimony unreliable. Smith testified that his methodology consisted of applying simple mathematical formulas:

> Illustrations assumes a $25,000 annual income adjusted for inflation beginning at, I have the child's name incorrect, at age 18. This opinion is based on current interest rates, current distribution rates, and three percent inflation rates. Obviously everything is changeable . . . This is nothing more than simple math; what it takes in order to do what the Dressers have asked.

Def.'s Mot. *In Limine* [dkt # 134] Ex. G, Thomas Smith Dep. at 19-22. The defendant has not stated how that testimony is rendered inadmissible.

Finally, lack of academic training, a college degree, and previous expert witness experience does not render expert testimony inadmissable. *See Zuzula v. ABB Power T & D Co., Inc.*, 267 F. Supp. 2d 703, 713 (E.D. Mich. 2003) (stating that "although a degree might be helpful in determining qualifications, since valid assumptions safely may be drawn from the general training one receives on the way to a diploma, . . . it is neither a necessary nor a sufficient condition for qualification as an expert because the expert's education must be relevant to the opinion, and qualification may be based on knowledge, skill, experience or training as well") (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994)). As a licenced life insurance specialist since 1986 dealing in long-term care annuities, Smith is qualified in how to structure an annuity to care for Mikhail. His qualifications are also demonstrated by his Life Underwriter Training Council certification and position as President of the National Association of Insurance and Financial

Advisors for the Bay Area Chapter. The prior relationship of the expert to the plaintiffs and the expert's stake in the outcome of the case also do not make evidence inadmissable but relate to the weight the jury should assign his testimony.

The grounds cited by the defendant do not render Smith's testimony inadmissible, and therefore the motion *in limine* will be denied. However, as with the previous motion, the admissibility of this testimony will depend on the foundation brought forth at trial. Consequently, this is not a "definitive ruling" as to this issue. *See* Fed. R. Evid. 103(a).

## VII.

For the reasons states above, the plaintiffs' motion *in limine* will be denied and the defendant's motions *in limine* will be granted in part and denied in part.

Accordingly, it is **ORDERED** that the plaintiffs' motion *in limine* to exclude evidence of any negligence on the part of the plaintiffs' Marilyn and Richard Dresser [dkt # 128] is **DENIED**.

It is further **ORDERED** that the defendant's motion *in limine* to exclude references to any damages sustained by Mikhail's family members as a result of the plaintiff's medical condition [dkt # 129] is **GRANTED.**

It is further **ORDERED** that the defendant's motion *in limine* to exclude plaintiffs' witnesses from testifying as to the standard of care an adoption agency must conform to when securing medical records when operating in a foreign country [dkt # 130] is **DENIED**.

It is further **ORDERED** that the defendant's motion *in limine* to strike the expert testimony of Dr. Patricia Robertson [dkt # 131] is **DENIED**.

It is further **ORDERED** that the defendant's motion *in limine* to exclude the Dressers' alleged economic damages [dkt # 132] is **DENIED**.

It is further **ORDERED** that defendant's motion *in limine* to exclude any lost economic opportunity damages and to strike the expert testimony of Thomas E. Smith [dkt # 133] is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: March 20, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 20, 2006.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---